IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE BEAR MILL, INC., an Idaho corporation, and JANIS FENTON, an individual,<br><br>          Plaintiffs,<br><br>v.<br><br>TEDDY MOUNTAIN, INC., a Canadian corporation,<br><br>          Defendant. | Case No. 2:07- CV-492-EJL-LMB<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction (Docket No. 11). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I. BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff The Bear Mill, Inc. ("Plaintiff" or "The Bear Mill") is an Idaho corporation doing business in Coeur d'Alene, Idaho. Compl., p. 1 (Docket No. 1). The Bear Mill engages in retail and wholesale sales of stuffed animals and accessories. *Id*. at 2. Plaintiff Janis Fenton is the President of The Bear Mill and an Idaho resident. *Id*. The Bear Mill operates national and

---

[1] When ruling on a Rule 12(b)(2) motion to dismiss for lack of jurisdiction, "a plaintiff's version of the facts is taken as true." *National Union Fire Ins. Co. v. Aerohawk Aviation, Inc*., 259 F. Supp. 2d 1096, 1101 (D. Idaho 2003). Accordingly, the "Background and Procedural History" section references Plaintiffs' alleged facts.

**REPORT AND RECOMMENDATION - 1**

international franchises as well as an Internet website through which purchases can be made. *Id*. The Bear Mill has been in the "teddy bear" business since 2002. *Id*.

Defendant Teddy Mountain, Inc. ("Defendant" or "Teddy Mountain") is a Canadian corporation that, while also in the teddy bear business, has no affiliation with Plaintiffs. *Id*. Teddy Mountain maintains a website at www.teddymountain.com through which customers can order stuffed animals, inquire about franchise opportunities, and view "store locations."[2] Plaintiffs allege that Teddy Mountain's website "makes several references to The Bear Mill, Inc., Fluff Mountain, Bobbins Bear and depicts pictures of The Bear Mill's fixtures, designs and franchise stores" for which the Plaintiffs own trademarks. *Id*. at 3. Teddy Mountain did not have authorization to use these trademarked materials. Fenton Aff., p. 3 (Docket No. 9, Att. 2).

On November 14, 2007, Plaintiffs filed a complaint setting forth three causes of action: (1) trademark infringement, (2) misappropriation, and (3) interference with a reasonable business expectation. *See* Compl. (Docket No. 1). Plaintiffs also filed an Ex Parte Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Docket Nos. 2, 9). Less than one month later, Defendant filed a Motion to Dismiss for Lack of Jurisdiction (Docket No. 11). On November 15, 2007, United States District Judge Edward Lodge denied Plaintiffs' Motion for Temporary Restraining Order (Docket No. 8). Plaintiffs' Motion for Preliminary Injunction was stayed pending the outcome of Defendant's Motion to Dismiss (Docket No. 13).

---

[2] Under the store locations tab of the website, there are nineteen (19) store locations listed. Sixteen (16) of those are listed as "The Bear Mill." Three (3) of those are listed as "Teddy Mountain." Two of the Teddy Mountain locations are in Denmark and one is listed in South Carolina. *See*, Exhibit B to Ex Parte Motion, p. 12 (Docket No. 2, Att. 5); *see also* www.teddymountain.com. As of April 29, 2008, it appeared that "The Bear Mill" store in College Station, Texas was removed from the "Teddy Mountain" website's store locations tab. This apparent discrepancy is not material to the disposition of Defendant's Motion to Dismiss.

**REPORT AND RECOMMENDATION - 2**

## II.  STANDARDS OF LAW

A.  **Motion to Dismiss**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Where the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In such cases, a court need only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Id.* Although the plaintiff cannot rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true. *Id.* "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

B.  **Personal Jurisdiction**

The Court's power to exercise personal jurisdiction over a non-resident defendant is limited by both the applicable state personal jurisdiction statute (long-arm statute) and the Due Process Clause. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002); *Sher v. Johnson*, 911 F.2d 1357, 1360 (9th Cir. 1990). However, as the Ninth Circuit recognized, the Idaho Legislature intended to exercise all of the jurisdiction available under the Due Process Clause. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). Thus, resolution depends upon the issue of due process. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

Due process requires that, in order for a non-resident defendant to be haled into court, that defendant must have certain "minimum contacts" with the forum state such that the

**REPORT AND RECOMMENDATION - 3**

traditional notions "'of fair play and substantial justice'" are not offended. *See Sher*, 911 F.2d at 1361 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Additionally, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The focus is primarily on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

States may exercise general or specific jurisdiction over non-resident defendants. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction can be asserted when the defendant's activities in the forum state are "continuous and systematic" or "substantial." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 447 (1952); *see also Lake*, 817 F.2d at 1420. To find specific jurisdiction, the Court looks to the three-part test as applied in *Lake,* 817 F.2d at 1420.

1. General Jurisdiction

General jurisdiction exists if Teddy Mountain's contacts with Idaho are considered "continuous and systematic," *Helicopteros*, 466 U.S. at 416, and the exercise of jurisdiction satisfies "traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). "The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citation and quotation marks omitted); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Several factors to consider when

**REPORT AND RECOMMENDATION - 4**

determining general jurisdiction include: "whether defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters*, *Inc*., 223 F. 3d. at 1086.

    2.    <u>Specific Jurisdiction</u>

When specific jurisdiction is asserted, a three part test applies: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Lake*, 817 F.2d at 1421. The plaintiff bears the burden of satisfying the first two prongs of the test. *Sher*, 911 F.2d at 1361. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462-, 476-78 (1985).

Here, Plaintiffs argue that Teddy Mountain is subject to specific personal jurisdiction in Idaho, or alternatively, in any forum in the United States. *See* Pls.' Resp. to Def.'s Mot. to Dismiss, pp. 4-11 (Docket No. 20). In response, Teddy Mountain argues that the district court may not assert either general or specific personal jurisdiction against it, and, consequently, the complaint must be dismissed. *See* Def.'s Memo. in Supp. of Mot. to Dismiss, pp. 2-9 (Docket No. 11, Att. 2).

**REPORT AND RECOMMENDATION - 5**

### III.  ANALYSIS

**A.     General Personal Jurisdiction**

Plaintiffs do not argue that general jurisdiction exists.  Regardless, Plaintiffs' allegations do not establish sufficient forum-based contacts to permit a finding of general jurisdiction in any event.  In fact, Teddy Mountain's only alleged contact with the forum is via Teddy Mountain's internet website.  Plaintiffs do not allege that sales were made or solicited in Idaho nor do they allege that Teddy Mountain holds a license, is incorporated in, or has an agent for service of process in Idaho.  Teddy Mountain maintains an Internet website that, like the website Fred Martin operated in *Schwarzenegger v. Fred Martin Motor Co.*, is available "from any Internet cafe in Istanbul, Bangkok, or anywhere else in the world."  374 F.3d at 799.  Under Ninth Circuit authority, the mere operation of a website does not approximate physical presence within the forum and is insufficient to establish general jurisdiction over Teddy Mountain.  *See Id.* at 801.

**B.     Specific Personal Jurisdiction**

      1.     <u>Purposeful Availment/Purposeful Direction</u>

Plaintiff must show that Teddy Mountain either purposefully availed itself of the privilege of conducting business in the forum or purposefully directed its activities toward the forum.  *Schwarzenegger*, 374 F.3d at 802.  "A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."  *Id*. (internal citations omitted).

Purposeful availment requires affirmative conduct which allows or promotes the transaction of business within the forum.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).  Here, Plaintiffs have not alleged any facts that would suggest

**REPORT AND RECOMMENDATION - 6**

Teddy Mountain purposefully availed itself of the laws of Idaho or the United States.  Posting allegedly trademarked material on a website in Canada took place outside of Idaho and outside of the United States.  *See Pebble Beach Co.,* 453 F.3d at 1156.  Moreover, according to Janis Fenton, Plaintiffs have no contract or "association with Teddy Mountain, Inc."  Fenton Aff., p. 3 (Docket No. 9, Att. 2).  Therefore, based upon the allegations asserted in Plaintiffs' Complaint, Teddy Mountain did not purposefully avail itself of the laws of Idaho or the United States.

However, specific personal jurisdiction may be appropriate where a foreign act is both aimed at and has an effect in the forum.  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).  This is known as "purposeful direction."  Misappropriation of a trademark is an intentional tort and, as a result, tracks the purposeful direction analysis .  *See Precision Craft Log Structures, Inc. v. Cabin Kit Co., Inc*., 2006 WL 538819 (D. Idaho).

Purposeful direction is evaluated under the three-part "effects" test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  The Ninth Circuit described *Calder* and its three-part test as follows:

> *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." . . . [Under] *Calder*, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*See Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food*, 303 F.3d at 1111 (internal citations omitted)).  Consistent with the purposeful direction analysis, Plaintiffs argue that Defendant aimed its tortious conduct at Idaho and, likewise, that Idaho suffered the effect of such conduct. Keeping in mind that not every "foreign act with foreseeable effects" in the forum state will

**REPORT AND RECOMMENDATION - 7**

support a finding of specific jurisdiction, *Dole Food Co.*, 303 F.3d at 1112 (citation omitted), Defendant's alleged conduct will be contrasted against the *Calder* "effects" test to determine the appropriateness of finding jurisdiction here.

      a.      *Intentional Act*

Defendant concedes that The Bear Mill "may be able to demonstrate the first part of the *Calder* test (commission of an intentional act), as Teddy Mountain does operate a website that uses items for which TBM allegedly owns the trademark." *See* Def.'s Memo. in Supp. of Mot. to Dismiss, p. 8 (Docket No. 11, Att. 2). Defendant is correct. Trademark infringement is an intentional tort. Operation of a website containing allegedly trademarked material is sufficient to constitute the commission of an intentional act.

      b.      *Expressly Aimed at the Forum State*

Plaintiffs argue that Teddy Mountain expressly aimed its conduct at Idaho by referencing Plaintiff's trademarks on its website. *See* Pls.' Resp. To Def.'s Mot. to Dismiss, pp. 5-6 (Docket No. 20) ("[J]urisdiction is appropriate when a defendant uses another's trademark with the express purpose of harming the plaintiff.") As authority for this argument, Plaintiffs cite to *Panavision Int'l*, 141 F. 3d 1316.

*Panavision*, however, is distinguishable. There, the defendant registered a trademark with the express purpose of extorting money from the plaintiff by cybersquatting.[3] *Id*. at 1318. Specifically, the defendant registered the plaintiff's trademarks as his domain names on the Internet, later demanding $13,000 from the plaintiff to release those same domain names. *Id*.

---

    [3] Cybersquatting is the activity of registering an Internet domain name containing a registered trademark for the express purpose of extorting money from a trademark holder.

**REPORT AND RECOMMENDATION - 8**

Here, there is no similar, focused act directed from Defendant to Plaintiff. That is, using the lexicon employed by the Ninth Circuit in *Panavision*, there is no obvious "scheme to obtain money" from Plaintiff. *Id*. at 1321 ("[The defendant] purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision to pay him money.")[4] Instead, Plaintiffs claim that Defendant is taking advantage of Plaintiffs' goodwill and causing confusion among The Bear Mill's customers by using trademarked materials. *See* Compl., p. 3-4 (Docket No. 1). It may be that Defendant's website has the effect of causing confusion and luring away unsuspecting customers of The Bear Mill as Plaintiff argues. However, the express purpose of the website appears to be to sell stuffed animals, accessories, and franchises - not to harm Plaintiffs through a scheme designed to extort money from a known trademark holder.

Plaintiffs alternatively argue that Defendant expressly aimed its conduct at the state of Idaho by individually targeting The Bear Mill, an Idaho corporation, which required The Bear Mill to file its verified complaint. *See* Pls.' Resp. To Def.'s Mot. to Dismiss, p. 6 (Docket No. 20). Again, Plaintiffs cite to a cybersquatting-type case - *Bancroft & Masters, Inc. v. Augusta*

---

[4] The Ninth Circuit went on to state:

> We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. . . . [T]here must be "something more" to demonstrate that the defendant directed his activity toward the forum state. Here, that has been shown. [The defendant] engaged in a scheme to register [the plaintiff's] trademarks as his domain names for the purpose of extorting money from [the plaintiff]. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business ....

*Panavision Int'l*, 141 F.3d at 1322.

**REPORT AND RECOMMENDATION - 9**

*Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000). *Id*. In *Bancroft*, the Ninth Circuit reasoned that *Calder's* "express aiming" element is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id*. at 1087. Similar to *Panavision*, defendant acted intentionally when it sent a letter individually targeting the plaintiff, a California corporation doing business almost exclusively in California. *Id*. at 1088. ("[T]he effects of the letter were primarily felt, as [the defendant] knew they would be, in California.") Here, Defendant's alleged conduct did not individually target Plaintiffs in the same way that the defendants' letters clearly did in both *Panavision* and *Bancroft*.

The Bear Mill is, however, a "target" in the same manner Arnold Schwarzenegger was a target in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004),[5] or Pebble Beach was a target in *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).[6] In both of those cases, the *effect* of the intentional acts may have caused the plaintiffs' damage, but the defendants' underlying conduct was not considered to be expressly aimed at the plaintiffs in such as way as to confer specific personal jurisdiction. That is, it is clear that there was no scheme to extort money directly from the plaintiffs in those cases and, therefore, there was no evidence that the defendants' conduct was expressly aimed at the forum state in the same manner

---

[5] In *Schwarzenegger*, a car dealer in Akron, Ohio used the image of the "Terminator" in a newspaper advertisement to sell used cars. The advertisement was available on the Internet. The Ninth Circuit affirmed the lower court's granting of the defendant's motion to dismiss for lack of general and personal jurisdiction.

[6] In *Pebble Beach*, the defendant registered the domain name, www.pebblebeach.com to advertise for his resort located in England. Again, the Ninth Circuit affirmed the lower court's granting of the defendant's motion to dismiss for lack of personal jurisdiction.

**REPORT AND RECOMMENDATION - 10**

contemplated by either *Panavision* or *Bancroft*.  Similarly, in the instant case, Defendant maintains a website with the express purpose of operating a teddy bear and franchise business rather than for the express purpose of harming Plaintiffs.  The operation of a website without a scheme to extort money or otherwise cause harm is insufficient to establish that Defendant targeted Plaintiffs here.  In short, as the litany of cases from this Circuit contemplate, "something more" is needed beyond using a trademarked name on an Internet website in order to confer jurisdiction in Idaho.

The fact that the parties are competitors in the teddy bear and franchise business, coupled with Defendant's knowledge of the location of Plaintiffs' business, begs the question as to whether the "something more" requirement under the "effects" test is satisfied.[7]  Given the confluence of such factors, jurisdiction should be recognized here.  *See, e.g., Precision Craft Log Structures, Inc. v. Cabin Kit Co., Inc.,* 2006 WL 538819 (D. Idaho 2006).

In *Precision Craft*, the plaintiff and the defendant were competitors.  Relevant to that dispute, the defendant posted the plaintiff's copyrighted materials on its website without the plaintiff's authorization.  Moreover, the defendant knew the plaintiff was located in Idaho.  Considering the defendant's motion to dismiss on similar arguments raised here, United States District Judge Edward Lodge reasoned:

> In the present case, a competitor of Plaintiff, who could deliver catalogs, sell cabin plans and materials to customers in Idaho and elsewhere from their web site, was allegedly using Plaintiff's

---

[7] Defendant argues that knowledge of the location of Plaintiff is insufficient to confer jurisdiction under *Pebble Beach*.  *See* Reply Mem. in Supp. of Def.'s Mot. to Dismiss, pp. 2-4 (Docket No. 21).  However, in that case, the parties were not competitors, raising an important distinction between it and, for example, *Precision Craft Log Structures, Inc. v. Cabin Kit Co., Inc.*, 2006 WL 538819 (D. Idaho 2006).

**REPORT AND RECOMMENDATION - 11**

> copyrighted materials without permission yet with the knowledge [the plaintiff] was based in Idaho. This alleged misappropriation of the copyrighted materials for the sake of increasing sales against a competitor located in Idaho is the "something more" required under the effects test to satisfy the purposeful availment requirement for specific, personal jurisdiction.

*Id*. at *7. Judge Lodge ultimately concluded that, assuming the alleged acts of copyright infringement to be true for the purposes of the defendant's motion to dismiss, the defendant's "conduct and connection with Idaho were such that they should have reasonably anticipated being sued in Idaho." *Id*. This same rationale, applied to a similar set of facts, applies here.

It is undisputed that The Bear Mill and Teddy Mountain are competitors. Further, as acknowledged in oral argument, Defendant had actual knowledge that The Bear Mill's principal place of business is in Coeur d'Alene, Idaho. Also during oral argument, it was acknowledged that the principals of both parties apparently know each other personally. Under *Precision Craft's* explicit direction, Teddy Mountain's knowledge that The Bear Mill is located in Idaho, combined with the competitive relationship of the parties and alleged misappropriation of trademarked material, satisfy the "something more" requirement of the "effects" test. Therefore, for purposes of jurisdiction, Teddy Mountain expressly aimed its allegedly tortious conduct at Idaho through its unauthorized use of trademarked materials on its website.[8]

   c.  *Caused Harm*

Because the parties are competitors, any sale facilitated by the trademarked materials would have the effect (direct or indirect) of injuring The Bear Mill in Idaho, even if the sale was

---

[8] Plaintiffs' unopposed April 23, 2008 Supplement to Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction and attached Second Affidavit of Janis Fenton (Docket No. 29) further supports the finding of jurisdiction.

**REPORT AND RECOMMENDATION - 12**

not to an Idaho resident. Additionally, as previously discussed, it is undisputed that the Defendant knew the location of The Bear Mill. Therefore, the final prong of the "effects" test is satisfied. With all three prongs of the *Calder* "effects" test met, the Court recommends a finding that Teddy Mountain purposefully directed its activities at Idaho and that Teddy Mountain should have reasonably anticipated being sued in Idaho.

2. Arises Out of

Next, the Court must determine whether the Plaintiffs' claims arise out of Defendant's forum-related activities. Under Ninth Circuit precedent, this second requirement for specific jurisdiction is met if The Bear Mill would not have been injured "but for" Teddy Mountain's conduct in the forum. *Rio Props.*, 284 F.3d at 1021. Teddy Mountain's alleged improper use of trademarked materials on its website, if proven, is sufficient to show harm to The Bear Mill in its principal place of business in Idaho. But for Teddy Mountain's conduct, no injury would have occurred. *See Precision Craft*, 2006 WL 538819 at *8 ("Cabin Kit's alleged improper use of copyrighted materials on their web site and in sales had the effect of injuring Precision Craft in its principal place of business in Idaho. But for Cabin Kit's alleged intentional conduct, this injury would not have occurred. Thus, Precision Craft's claims arise out of Cabin Kit's Idaho-related activities.")

3. Fair Play and Substantial Justice

The third and final prong of the specific jurisdiction inquiry is whether the exercise of jurisdiction comports with traditions notions of fair play and substantial justice as to make it reasonable. "In determining reasonableness, seven factors are considered: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's

**REPORT AND RECOMMENDATION - 13**

interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Rio Props*, 284 F.3d at 1021 (internal citations omitted). "It is well established that in determining personal jurisdiction the court must focus primarily on 'the relationship among the defendant, the forum, and the litigation.'" *Precision Craft*, 2006 WL 538819, *8 (quoting *Shaffer*, 433 U.S. at 204).

After considering all seven factors, this Court recommends a finding that jurisdiction in Idaho comports with "fair play and substantial justice. *Paccar Int'l v. Commercial Bank of Kuwait, S.A.K*, 757 F.2d 1058 (9th Cir. 1985). Purposeful injection weighs in favor of Plaintiffs because of the alleged infringement of trademarked items. The burden on defending a lawsuit in Idaho rather than in Canada is slight due to the geographic proximity and because of the activities of the principals of the Defendant company in Idaho (as were discussed during oral argument). Additionally, Idaho has a substantial interest in protecting its residents from intentional torts, regardless of where the alleged tortfeasor resides. After considering all seven factors, this Court finds, and thus recommends, a conclusion that the exercise of jurisdiction is reasonable. *See generally Precision Craft*, 2006 WL 538819, *8.

## IV.  RECOMMENDATION

In accordance with the foregoing, it is RECOMMENDED that the District Court enter an order consistent with the following:

1. Defendant's Motion to Dismiss for Lack of Jurisdiction (Docket No. 11) be DENIED.

///

///

///

**REPORT AND RECOMMENDATION - 14**

In the event the District Court adopts this Court's Recommendation, this Court will enter a briefing schedule on Plaintiffs' Motion for Preliminary Injunction (Docket No. 9) immediately following the disposition of Defendant's Motion to Dismiss.



DATED:  **May 7, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 15**